## GATES *vs.* TREAT.

A motion for a new trial may, after the death of the party who filed it, be prosecuted by his administrator.

Where several persons are appointed arbitrators to perform respectively distinct though connected acts designed to accomplish together one entire object, which will be frustrated unless those distinct acts concur, the terms of the submission must be complied with by each of the arbitrators, to whom the particular matters are referred, to constitute a good and final award.

Therefore where a submission to arbitrators, by parties who owned mills on the

opposite sides of a river, stipulated, that a certain point in the bed of such river should be ascertained by K., and should be designated by suitable marks, bounds, and monuments, to be placed in said bed by L. and D.; and K. ascertained such point and caused it to be indicated upon the upper surface of a stone, in the presence of L. and D., and signed an instrument stating, that in pursuance of said submission, he had ascertained and indicated said point as aforesaid; but L. and D. refused to sanction the determination of K., and to place any bound or monument to designate it; it was held, that there was only a partial and defective execution, by the persons to whom the controversy was referred, of the powers conferred on them by the submission; and that the instrument so executed by K. did not constitute an award.

THIS was an action on the case for the diversion of a water course.

The declaration stated, substantially, that the plaintiff was the owner of a certain tract of land in the town of Voluntown, containing thirty acres, with Pachaug river flowing through it, and of a factory building and water-wheel on said land, with an artificial canal about four hundred feet long, leading from the river to the factory, and water-wheel, for the purpose of operating them. That the water, until the grievances complained of by the plaintiff, had been accustomed to flow in great plenty and abundance to the factory, and water-wheel, &c.; that at the time of committing said grievances, said factory, buildings, water-wheel and appurtenances, were in the possession of one John E. Lindley and Isaac W. Thompson, under a lease which was to continue for the period of ten years from the ninth day of April, 1857, and which provided, that if there should be a lack of power in consequence of the width and depth of said canal, or from inability to turn the water into the same, the rents were to cease until such difficulties were removed. That on or about the 11th day of October, 1847, the defendant, by digging up and removing the bed of said river, along and opposite to the head of said canal, to the depth of three feet, wrongfully and unjustly diverted and turned away the whole water of said stream from the plaintiff's canal, and permanently prevented the water of said stream, from flowing through said canal to said mill and water-wheel, and from supplying the same with the water necessary for the working thereof, &c.

The defendant pleaded the general issue, on which the cause was tried at the term of the superior court, holden at Brooklyn, in January, 1855.

On the trial, the plaintiff gave in evidence, the following written instrument, which had been executed in the presence of two witnesses, and acknowledged before a justice of the peace.

" This indenture, made and entered into this seventh day of October, A. D. 1847, by and between James S. Treat and Samuel Gates, of Voluntown, in the county of Windham, and state of Connecticut, witnesseth : That whereas the said parties are respectively owners of certain lands and mills situated in said Voluntown, upon, and contiguous to the Pachaug river, and controversies have arisen, and now exist in relation to the rights and privileges appertaining and belonging to said respective parties, and a suit is now pending in the superior court, for said county, in favor of said Treat, against said Gates, for an alleged violation of his rights in the premises ; said parties being desirous of terminating said controversies, and settling and determining their respective rights and privileges as aforesaid, and regulating the future exercise and enjoyment of the same, have agreed, and do hereby agree in manner following, to wit : said suit shall be continued to the next term of said court, to be held on the fourth Tuesday of January next, at which term of said court, judgment shall be entered up, in conformity with the award and decision that shall be made between said parties, as is hereinafter provided." After providing for the submission to an arbitrator of the amount of damages, if any, to be paid by said Gates, for the alledged violation of said Treats' rights, said instrument proceeded as follows :

" And for the purpose of settling and determining their respective rights and privileges in the premises, and regulating the future use and enjoyment of the same, said parties have agreed, and do hereby agree in manner following (to wit :)

A point, four inches below the natural bed or bottom of the river, as the same was when surveyed by Archibald Kennedy, at the outlet of said Treat's mill-ditch, and extending to the entrance into said Gates' ditch, shall be ascertained by said

Kennedy, or by such other person or persons, as said parties shall agree upon for that purpose; which point shall be designated by suitable bounds, marks, and monuments, to be placed by John E. Lindley and Joseph H. Doane, in the bed of said river; above which point so designated, said Gates shall not have the right to raise the water in his mill-ditch. But it is further agreed, that said Gates, his heirs, and assigns, shall have the right to excavate the bed of said river, as well as his own land, so far as may be required to turn the water of said river into his mill-ditch, but said excavation shall be so made and secured, as at all times to prevent the undermining or washing away of the banks of said Treat's land, contiguous thereto. Said Treat, his heirs and assigns, shall have the right to reduce the bed or bottom of said river, to the extent of the said four inches as aforesaid, and to remove any rocks, trees, islands, or other obstructions, which now are, or hereafter shall be between the banks of said river below said monuments, to be placed as aforesaid, across said river, so far as his lands extend, as well on said Gates' side of said river, as his own; but in such a manner, as not to undermine or remove said Gates' banks.

And said parties hereby agree for themselves, their heirs or assigns, at all times hereafter, to use and enjoy their said lands and mills, with the privileges and appurtenances thereof, in manner and form as is above written.

And whereas, the said Gates has heretofore conveyed his land and mills by deeds of mortgage, as by the records of said town of Voluntown may appear, he, the said Gates, hereby agrees, that said parties holding said mortgages, shall, by deeds of release, by them well executed, relinquish any right or claim which they may have under said mortgages, which shall conflict or interfere with said agreement, herein before made and provided, as to said premises. Said deeds of release to be made, executed and delivered, on or before the first day of December next, unless prevented by the decease of such mortgagees; and it is further agreed, that John E. Lindley and Joseph H. Doane, shall ascertain and determine the dividing line between the said lands of said Treat and

Gates, and erect suitable bounds, to which said parties shall hereafter conform; and the said parties, bind themselves each to the other, in the sum of two thousand dollars, not as a penalty, but as stipulated damages, to conform to, and abide by said award, as made and published as aforesaid, and in no way to revoke this submission.

In witness whereof, the said parties, have hereunto set their hands and seals, this seventh day of October, Anno Domini 1847.                JAMES S. TREAT, (seal.)

SAMUEL GATES, (seal.) "

The deed of release referred to in said writing, executed in due form of law, were then exhibited in evidence by the plaintiff. He also introduced a great number of witnesses for the purpose of proving the allegations contained in his declaration, and also, to show that, although Kennedy had designated a point in the bed of the river, as that ascertained by him and referred to in said writing, the point so designated by him was too low, and that his doings had never been sanctioned by Lindley and Doane, and also to prove that in the autumn of 1847, after the date of said writing, the defendant caused the bed of said river to be excavated and removed to a much greater depth than was provided for in said writing, and that thereby the water was unlawfully changed and diverted from the plaintiff's canal and mill.

The defendant read the deposition of Archibald Kennedy, the material part of which is as follows:

" I was called upon by James S. Treat, sometime in the early part of October, 1847, and about that time said Treat placed in my hands an agreement between himself and Samuel Gates, dated the seventh day of October, 1847. By said agreement, I was to ascertain a point four inches below the natural bed or bottom of said river, as it was when I heretofore surveyed it, at the outlet of Mr. Treat's mill-ditch, and extending to the entrance of Col. Gates' ditch. Accordingly, I made the level, starting from the base line established from the center of the old wheel, and found said point, and placed a stone, the upper surface of which was marked thus,

($+\frac{T}{G}$) which upper surface of said stone is four inches below the natural bed or bottom of said river, and no more. And on the 26th day of October, 1847, I gave a certificate or award, signed and sealed by me, in presence of Bonaparte Campbell, and A. S. Robbins; which certificate or award is hereto attached, and made a part of this deposition, and is true."

The certificate of Kennedy, was as follows:

" In pursuance of the submission and agreement made and entered into, by and between James S. Treat and Samuel Gates, of Voluntown, in the county of Windham, bearing date the seventh day of October, A. D. 1847, and hereto annexed, the undersigned Archibald Kennedy, having examined the premises and heard the parties, has ascertained the point four inches below the natural bed or bottom of Pachaug river, as the same was when it was heretofore surveyed by said Kennedy, at the outlet of said Treat's mill-ditch, and extending to the entrance into said Gates' mill-ditch, which point corresponds with, and is indicated by the upper surface of a stone set in the bed of Pachaug river, near the mouth of said Treat's cotton-mill ditch, which stone is marked thus, ($+\frac{T}{G}$) the upper or top surface of said stone, or monument, being the height above which said Gates shall not have the right to raise the water in his mill-ditch; and also placed a mark thus ——— on the south-west corner of said Treat's stone engine house, which point is twelve feet four inches, and five-eighths of an inch above the top of said stone or monument described above. In witness whereof I have hereunto set my hand and seal this 26th day of October, A. D. 1847, at Voluntown.

ARCHIBALD KENNEDY, (seal.)

John E. Lindley, testified as follows:

" Joseph H. Doane and I, were notified to be present and were present, when Archibald Kennedy ascertained the point four inches below the bottom of the river, and Kennedy set the stone to designate it. A hole was dug on the east side of the river, just below the mouth of defendant's ditch,

Gates *v.* Treat.

and the stone was set there, and I understood at the time, that Kennedy said the top of that stone was four inches below the natural bed of the river ; and Mr. Doane and myself were called on to sanction Kennedy's doings ; but Doane said he should have nothing to do with it. Doane and I were the persons, who by the agreement of the parties were to fix monuments, to designate the point four inches below the natural bed of the river, after it had been ascertained by Kennedy. My impression was, that the stone set by Kennedy, was set too low, and that is the reason why I refused to sanction it, for the top of the stone was then lower than the bed of the river was at that time."

A great amount of other evidence was introduced on the trial, consisting of parol testimony, maps, surveys, deeds, &c., which it is unnecessary to state in detail.

The defendant claimed, and requested the court to charge the jury, that the doings of Kennedy, in ascertaining and fixing the point four inches below the natural bed or bottom of the river, were equivalent to an award of arbitrators, and conclusive upon, and could not be impeached by the plaintiff, and that if the jury should find, that the defendant had not reduced the bed of the river below the point so ascertained, their verdict should be for the defendant.

The plaintiff claimed that the point ascertained and fixed by Kennedy, was twenty-six inches below the natural bed or bottom of the river, between the two ditches, instead of four inches ; and that in fixing upon that point, Kennedy had either conducted fraudulently and unfairly, or had committed a mistake on his own principles ; and requested the court to charge the jury, that if they should find the fact to be as claimed by him, the doings of Kennedy were not binding upon the plaintiff, and should be laid out of the case.

The court charged the jury, on this part of the case, in conformity with the request of the plaintiff.

Upon the evidence introduced on the trial, the defendant claimed, that the plaintiff had failed to make out his case, and was not therefore entitled to a verdict of the jury in his favor.

But the jury rendered a verdict in favor of the plaintiff, with fifteen hundred dollars damages, and his costs. The court returned the same to them, for a second, and a third consideration, and as the jury adhered to the same verdict, the court ordered it to be recorded.

The defendant moved for a new trial, because the court refused to charge the jury as requested by him, but charged them as requested by the plaintiff; and also on the grounds, that the verdict was manifestly against evidence, and that the amount of damages was unreasonable and excessive.

The questions arising on this motion, were reserved for the advice of this court. Before the first day of the term of this court at which the case was reserved for trial, the defendant died ; and said motion was prosecuted by his administrator.

· *C. F. Cleveland* and *J. A. Hovey*, for defendant.

1. The right to prosecute a motion for the new trial of a personal action, does not die with the party who filed the motion, but survives to his personal representatives. *Turner's Adm.* v. *Brooker*, 2 Dana, 334. *Sanders' heirs* v. *Buskirk*, 1 Dana, 412. *Springstead* v. *Japnes*, 4 Cow., 423. *Denoon* v. *O'Hara*, 1 Brevard, 500. 4 U. S. Dig., Tit. abatement, Sec. 34, p. 3. 2 Tidd, 1096.

2. The provision in the agreement of the parties for ascertaining " a point four inches below the natural bed or bottom of the river, as the same was when it was surveyed by Archibald Kennedy," &c., was in the nature of a submission to arbitration ; and the finding by Kennedy of the point referred to was not impeachable at law, for fraudulent conduct or unfairness on his part, or for mistakes committed by him on his own principles; but was binding and conclusive upon the plaintiff, as well as the defendant, until regularly set aside by a court of chancery. 1 Sw. Dig., 471. *Bulkley* v. *Stewart*, 1 Day, 130. *Curley* v. *Dean*, 4 Conn. R., 259. *Newland* v. *Douglass*, 2 John. R., 62. *Barlow* v. *Todd*, 3 John. R., 367. *Braddick* v. *Thompson*, 8 East, 344. *Cranston* v. *Kenny*, 9 John. R., 212. *Veale* v. *Warner*, 1 Saund., 326.

3. The verdict of the jury was manifestly and palpably

against the evidence, and the damages are unreasonable and excessive.

*Foster* and *E. Perkins*, for plaintiff.

1. The doings of Kennedy are not to be regarded in the light of an award of arbitrators. He was not constituted an arbitrator. Doane and Lindley, by the agreement between the parties, were to perform an important part in ascertaining the point four inches below the bed of the river. These three made up the tribunal; and neither one could perform the duty alone, and make an award. If two out of three refuse to act in a matter submitted to the whole, the third can not pass on the matter submitted, even though it can be shown that his decisions were strictly correct, and that his associates refused to act with him from malicious motives.

The necessary result is, that the defendant was not entitled to the instruction asked in this part of the case, and can make no complaint of the instructions given.

2. But if the doings of Kennedy are to be regarded as an award, the charge can still be vindicated.

It is an ancient rule of the common law, that to an action brought for the non-performance of an award, the defendant could not plead or give in evidence, the corruption or misconduct of the arbitrators in making their award; resort must be had to a court of equity.

By the statute of 9th and 10th, Wm. III., it was enacted that any arbitration or umpirage procured by corruption or undue means, shall be adjudged void, &c., and accordingly set aside by any court of law or equity, so that complaint of such corruption or undue practice be made in the court, where the rule for such submission had been made, before the last day of the next term after such arbitration, &c., had been made, &c.

This act however, left the law in regard to submissions and awards not made by rule of court, as it was before. Wats. on Arb. 153–4.

And the general rule in regard to awards so situated is as

stated above, though there is some contrariety of authority. 2 Phil. Ev. 82.

In *Matson* et. al. v. *Trower* et. al., 21 E. C. L. 371, which was an action of assumpsit on an award, one of the objections to a recovery was, that the award was void, in consequence of the umpire having examined the parties in the absence of each other. The award was sustained.

This case goes directly to show that improper, and of course fraudulent conduct, on the part of the arbitrator, may be given in evidence to impeach an award.

In this country, however, a different rule, at least in many states, has prevailed. 2 Greenl. Ev., §78. 6 Pick., 269. 4 Pick., 179. 6 Met., 131. 3 Greenl., 60. In this state, as our court of law and equity is composed of the same judges, there can be no good reason for turning the plaintiff round on a mere technical question; especially when, as in this case, by the death of the party, a new trial is equivalent to a denial of justice altogether.

3. The verdict is not against the weight of evidence in the case.

4. The damages, so far from being excessive, are not to the amount to which the plaintiff has proved himself entitled.

STORRS, J   The defendant in this case, having died after this motion for a new trial was filed, the preliminary question arises, and is reserved for our advice, whether his administrator may prosecute it. According to the rules of practice which prevail in the superior court, that is the only mode in which he can revise the proceedings on the trial of the case. To refuse to allow him to prosecute this motion would, therefore, be to establish the principle that the creditors and heirs of a deceased person, and those otherwise interested in his estate, would be remediless against any errors which may have intervened on the trial; a doctrine which would be palpably most unjust, and opposed to the principles of the common law, by which, in all personal actions, an erroneous judgment may be reversed by the representative of either party who is prejudiced by it. Our mode

of practice is chargeable with no such defect. According to the common law mode of proceeding, which formerly prevailed here, the decisions of the court, in the progress of the trial of a case, might be introduced upon the record by a bill of exceptions, and revised by writ of error. In case of the death of the party against whom judgment was rendered, that writ, whether the action died with the person or not, might be brought by his representative. But as that method of revision was practically an inconvenient one, and oftentimes, by the strictness of the principles by which it was governed, which required a reversal of a judgment for any error whatever, although it did not affect the justice of the case, a rule was long since adopted by the superior court, by which it was abolished in all cases, and the present practice substituted, by which the questions decided on the trial are presented on a motion for a new trial, and reserved for the advice of this court, on which the judgment rendered by the superior court in the case, is established or set aside, according as the motion is, or is not granted by that court in conformity with our advice. These motions, in regard to the disposition of them, are subject to the discretion of the court, and a new trial is granted or refused, absolutely or on terms, as justice requires. They do not become a part of the record in the case in which they are made; they are not considered as a new or independent action or proceeding; nor do they differ, in their character, from any other motion made in the progress of the case. As it is plain, from this account of the introduction of the present practice on this subject, that it was not designed to prevent any person from revising a judgment, by which he is prejudiced, to the same extent as he could under the former practice, and as the judgment in the present case might, under the latter, have been revised, on a bill of exceptions and writ of error, by the defendant in this case, and after his death by his administrator, and as it is obvious, moreover, that the present question can be reviewed in no other mode than by allowing the administrator to prosecute this motion, we are clearly of opinion that the superior court decided correctly in permitting him to do so.

On the merits of this motion, two questions have been presented; first, whether the instrument of the 26th of October, 1847, executed by Kennedy, constituted, under the agreement, between the parties to this suit, of the 7th of October, 1847, an award or decision as to the extent to which the defendant should have the right to lower the bed of the Pachaug river, which, if unimpeached by the evidence offered by the plaintiff, was valid and conclusive on that question; and, secondly, whether if it did, it could be impeached by that evidence. The result to which we have come on the first of these questions, renders it unnecessary to consider the other.

The following are the material facts on which the first question depends. By the agreement before mentioned, the parties, who owned mills on the opposite sides of the river, which runs between their lands, agreed that a point four inches below the natural bed or bottom of the river, as the same was when it was surveyed by Kennedy, at the outlet of the defendant's mill-ditch, and extending to the entrance of the plaintiff's ditch, should be ascertained by Kennedy, and that said point should be designated by suitable bounds, marks and monuments, to be placed by John E. Lindley and Joseph H. Doane, in the bed of the river; that, above said point so designated, the plaintiff should not have the right to raise the water in his mill-ditch; that the defendant should have the right to reduce the bed or bottom of the river, to the extent of said four inches as aforesaid, and to remove the obstructions below said monuments, to be placed as aforesaid across said river, on both sides of the river, so far as his land extended; and that the parties thereafter should use and enjoy their lands and mills as their rights should be thus determined. Kennedy ascertained said point, and caused it to be indicated by the upper surface of a stone, which he placed in the bed of the river near the mouth of the defendants mill-ditch, and gave a certificate thereof, which is contained in the instrument before mentioned, executed by him. Lindley and Doane were present when the said point was so ascertained by Kennedy, but refused to sanction his determi-

nation, or to place any bounds, marks, or monuments, in the bed of the river to designate it, and it has never been so designated by them.

On the trial of this action, which is in case, alleging that the defendant excavated the bed of the river lower than he had a right to do, the defendant on the trial, claimed that the certificate of Kennedy was conclusive between the parties, as an award made by him in pursuance of said agreement, to prove that the point so ascertained by him and designated by the upper surface of the stone placed by him in the river, was precisely four inches below the natural bed of the river, as it was when it was theretofore surveyed by him, and therefore, that the defendant had a right to excavate the bed of the river to that point. The plaintiff admitted that the agreement between the parties, was a submission of their rights in respect to the use by them respectively of the water of the river, and that an award, made in pursuance of it, would, if unimpeached, be valid and conclusive as to such rights ; but claimed that Kennedy could not alone, and without the co-operation of Lindley and Doane, make a valid award under the submission; and further, that if he could, his doings were liable to be impeached by proof that the point ascertained and fixed by him, was twenty-six inches below the natural bed of the river, between the two ditches, instead of four inches only, and that Kennedy in fixing that point acted fraudulently and unfairly, and committed a mistake on his own principles. The court decided in conformity to the claim of the plaintiff.

Waiving any enquiry, for ourselves, as to the character and effect of the agreement entered into between these parties, and considering it in the only light in which they have treated it, as a proper submission of their rights to arbitrament, we are of opinion that, as it stipulates, that the point in the bed of the river, therein described, shall be ascertained by Kennedy, and designated by Lindley and Doane, by suitable marks, bounds and monuments, to be by the two latter placed in said bed, and that the parties should, in the use and enjoyment of their lands and mills, conform to that

point, nothing short of an ascertainment and designation by those persons respectively, was a full and complete compliance with the requirements of the agreement, or constituted, or was equivalent to an award, as to the rights of the parties, or a determination or settlement of them, according to its terms or true intent. In an action of covenant, brought directly for a breach of this agreement, it would clearly be necessary to aver and prove that the point was ascertained and designated in the mode prescribed by it; and we do not perceive why it is not as necessary, in an action like the present, in which it is sought to give a specific effect to what was done by the arbitrators under it, to prove those facts, as it would be in a suit in which damages were claimed for its violation. A submission to arbitration is only a particular species of contract, and the question of the liability or obligation of the parties, growing out of the award under it, is to be determined by the principles applicable to all other contracts, in whatever mode such liability or obligation is sought to be enforced. As a submission, this is certainly one of a singular character, and it corresponds with none which we find in the cases on the subject of arbitrament. We must, therefore, look to the general rules applicable to that subject. That which appears to be applicable here, is the one which requires that the award should be conformable to the terms of the submission. It must be made by the persons to whom the matter is referred, and they must act in the manner prescribed in the submission. In this respect, the proceedings of the arbitrators, in the present case, were defective. The object of this submission was two-fold; the ascertainment of the point mentioned in it, and the designation of that point by visible, permanent monuments. These were distinct acts, although to be done connectedly, and were both required to be done by the arbitrators, not, however, by them conjointly, but the first of them by Kennedy, and the other by Lindley and Doane. The office of Kennedy was entirely different from that of the others. It was really a reference to different persons to perform respectively distinct, though connected acts, designed to accomplish together one entire ob-

ject, and without the concurrence of which that object would be frustrated. One of these acts, the ascertainment of the point required, which was to be done by Kennedy, was performed. There his authority ceased. He placed a stone in the bed of the river to indicate that point. That, however, although it might serve as a guide to the other arbitrators, in regard to the duties which they were to perform, was a nugatory act so far as it, by itself merely, directly affected the parties to the submission, because it did not provide that that act alone should determine the rights of the parties; and it therefore had no more effect upon those rights than if it had been done by any other person. The other act, that of designating the point by monuments, was entirely omitted to be done by the two other arbitrators; for it is conceded that they neither placed any monuments themselves, nor sanctioned that which was placed by Kennedy. And it is not claimed that the plaintiff assented to the location of that monument by Kennedy or prevented or interfered with the action of the other arbitrators. This then is a case of a partial and defective execution, by the persons to whom the controversy between the parties was referred, of the powers conferred on them by the submission. It is not a good answer to this objection, that the ascertainment of the point, and not the designation of it by monuments, was the principal and only essential object, and that the other was futile and unimportant. We cannot say, nor do we think, that it was not quite as important to these parties that the point in question should be designated and marked by visible and permanent monuments, as that its locality should be ascertained. But it is sufficient that the parties have chosen to make it one of the terms of their agreement that it should be done, and that we have no right to dispense with it, or to vary or refuse to effectuate that agreement. The court below, therefore, correctly decided that the certificate of Kennedy was not entitled to the effect claimed for it by the defendant.

We are not satisfied, on an examination of the testimony in the case, that a new trial ought to be granted, on the

ground either that the verdict was manifestly against the weight of the evidence, or that the damages given were excessive.

A new trial is not advised.

In this opinion the other judges, HINMAN and ELLSWORTH, concurred.

New trial not to be granted.